THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _5.4_____
(Rule Number/Section)

___ LODGED
___ RECEIVED   ___ COPY

OCT 29 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ M. DEPUTY

# UNITED STATES,

## IN THE DISTRICT COURT FOR PHOENIX DISTRICT

WENDELL DWAYNE O'NEAL,
126 MILLS CREEK CROSSING,
MADISON, ALABAMA 35758,

Plaintiff,

CIV '10 235 1 PHX NVW

Vs.

ANGELA ATKINS, KYLE [KAMEIER], ADI [KAMHAWI], MONIQUE [MARQUEZ], SYDNEY [ROBERTSON], SALVADOR [SALAZAR], GENIE [WINSHIP], HILLARY [O'DONNELL] [AXIA] COLLEGE OF UNIVERSITY OF [PHOENIX], and PHOENIX CORPOARTE COLLECTION CENTER [CCC] ET AL, 3157 E. ELWOOD STREET, CF-A101, PHOENIX, ARIZONA 85040,

Defendants.

## CIVIL COMPLAINT,

PURSUANT TO TITLE 15. USCA. SECTS. 1681 [FCRA]; TITLE 15. USCA. SECTS. 1601.; TRUTH IN LENDING ACT [TILA], TITLE II. AMERICAN DISABILITY ACT [ADA], REHABILITATION ACT 504; TITLE 42. USCA. SECTS. 2000d., and ARIZONA TORT LAWS.

## I. JURISDICTION,

That Title 15. USCA. Sects. 1681. provides sufficient jurisdiction for remedy plaintiff seeks against defendant Phoenix Corporate Collection Center [CCC] for reporting a materially false, invalid, and inaccurate $3,812.25. "unsecured loan" charge off debt to Experian on or about August 14, 2009.

That the TILA; ADA; Rehabilitation Act 504, and 42. USCA. Sects. 2000d [Public Accommodation Denials] federal statutes also collectively provide remedies against defendant Phoenix supra for this court to grant reliefs sought by plaintiff, including, but not limited to, the inherent, underlying, or associated Arizona tort law claims through ancillary jurisdiction.

## II. VENUE,

That all events and or transactions giving rise to herein controversy transpired at defendant Axia college, including, but not limited to, subsequent communications made with plaintiff; its State Recovery System collection agent; CCC and Experian supra.

### III. COUNT I.,
### FAIR CREDIT REPORTING ACT VIOLATIONS,

**A. CCC INVALID AND INACCURATE DEBT DATA**

1.   That defendants Axia, Phoenix, and its Corporate Collection Center [CCC] agent are persons recognized under the FCRA.

2. That the FCRA prohibits said persons from making reports with credit bureaus containing known materially false; invalid, or inaccurate debt data.

3.   That Axia charged plaintiff $4,444.35 for early 11/30/2009 withdrawal from the universities 10/19/2009 online classes two year Criminal Justice Degree Program. See, attached Exhibit 1. PP. 1-4. 10/04/2010 Axia Acct. Exec. Genie Winship FCRA Dispute Response Letter, at PP. 2. Para. 5., in support.

4.   That Axia retained plaintiff $582.00 federal pell grant disbursement towards the $4,444.35 reducing student account balance to $3,862.25.  See, Exhibit 1. 10/04/2010 supra at PP. 2. Para. 4., in support.

5.   That Axia financial aid advisor Kamhawi noticed plaintiff via university email regarding alleged outstanding $3,862.25 student account balance on or about 12/11/2009.

3

6    That plaintiff alleges Axia wrongfully charged him $4,444.35 because Exec. Acct. Analyst Genie Winship recommended he withdraw from 10/19/2009 classes.   See, attached Exhibit 2. 11/10/2010 4:17 pm PP. 1. Para. 1., Para.3., Winship Email to Plaintiff.

7.  That Winship communicated Axia offer to reduce the $3,862.00 student account balance to $3,621.25 providing full payment was received by close of business day on 12/21/2009. See, Exhibit 3. PP. 1. 12/14/2009 11:42 am Winship Email Response to Plaintiff 12/11/2009 $3,862.35 Acct. Balance Grievance, in support.

8.   That plaintiff paid $50.00 in good faith towards Axia wrongfully alleged $3,862.35 student account balance debt believed reducing actual $3,039.25 debt owed. [$3,621.25 minus $582.00 federal pell grant equals $3,039.25]

9.   That plaintiff owed Axia $2,989.25 subsequent to the aforesaid $50.00 payment.

10.   That CCC wrongfully reported to Experian that Axia charged off a $3,812.25 "unsecured loan" to plaintiff contrary to known facts underlying $823.10 tuition charges and $3,621.25 advanced federal financial aid transactions giving rise to herein action prohibited under the FCRA.

11.   That Axia did not make a $3,812.25 "unsecured loan" to plaintiff but wrongfully caused CCC to report the debt charge off information to Experian supra.

12.   That CCC Axia combined its $823.10 partial tuition charges with $3,621.25 advanced federal student financial aid disbursement.

13.   That Winship 11/10/2010 withdrawal recommendation supra admits the university breached the 10/03/2009 enrollment agreement for reasons more fully set forth hereinafter.   See, Exhibit 2. supra, in support.

## B. AXIA INVALID $3621.25 UNSECURED LOAN

14.   That U.S. courts cannot enforce federal financial aid transactions made contrary to Title IV. HEA regulations without contractual agreement expressing repayment terms.

15.   That no document exists expressing agreement made between Axia and plaintiff for repayment of the $3621.25 in federal student aid funds disbursed on or about 10/29/2009.

16.   That Axia disbursed plaintiff $3,621.25 in federal student financial aid contrary to university policy and lawful provisions for early disbursement delineated under Title IV.

Chap. 2. – Disbursing Federal Student Aid Funds regulations. 34 CFR. 668.164(f) et seq

17.     That Axia 11/03/2009 $3,621.25 federal student financial aid loan to plaintiff was an overpayment specified under 34 CFR. 668.61(a) or 34 CFR. 668.139; Title IV. Volume 5 – Overawards, Overpayments.

18.     That Axia university policy defines an overpayment as "any amount of unearned grant funds the student must return". The maximum amount of a grant overpayment the student must repay is one-half the grant funds received or scheduled to receive. The student must arrange with the U.S. Dept. of Ed. To return the unearned grant funds…"

19.     That Axia provided plaintiff no notice that the aforesaid $3,621.25 "unsecured loan" was due in full on demand in event of early withdrawal from the university contrary to Winship October 4, 2010 FCRA dispute reply letter assertion. See, Exhibit PP. 1. 10/14/2010 Winship Letter Para. 3., in support

20.     That the U.S. federal student financial aid programs do not require full payment on demand for any loan made under any of its programs to plaintiff's knowledge.

21.   That neither the U.S. government nor Axia placed plaintiff on notice that he was required to pay the $3,621.25 "unsecured loan" in full on demand in event of early withdrawal from the institution.

22.   That Axia made the $3,621.25 federal student financial aid payment to plaintiff contrary to disbursement eligibility cited within HEA Sec. 484(a)(3), 34 CFR. 668.22(h), 668.32(g)(4) and or 668.35(c)&(e) authorities.

23.   That Axia made the $3,621.25 supra payment to plaintiff contrary to university policy.

24.   That Axia [federal] "Frequency of Disbursements" policy provides, in relevant part, that "the student becomes eligible to receive a disbursement of federal financial aid funds for the second payment period when he successfully completes half the weeks of instruction time AND half the credit hours in the academic year, program or the remaining portion of a program more than one half of an academic year but less than a full academic year".

25.   That plaintiff had not completed three weeks into his 10/19/2009 first [semester] term prior to Axia electronically disbursing said $3,621.25 into his Alabama Redstone federal

credit union checking account on or about 11/03/2009 for second [semester] term beginning subsequent to 07/05/2009.

26.    That Axia was liable for repaying the federal government the "early" $3,621.25 payment made to plaintiff because it failed to follow requirements set forth under 34 CFR. 668, 673, 674, 676, 690, or 691.   See, Exhibit 2. 10/14/2010 Winship Letter  at PP. 2. Para. 3., in support.

27.    That Axia attempted to coerce immediate and full repayment of the $3,621.25 from payment under threat of reporting an invalid "unsecured loan" to the credit bureau contrary to Title IV HEA regulations and or recommendations.

28.    That Axia maliciously caused CCC to include the $3,621.25 in $3,812.25 charge off reported to Experian as a "unsecured loan" because it failed to follow federal requirements supra, and;

- A. Did not provide notice of immediate full repayment terms;

- B. Could not force plaintiff full immediate repayment;

- C. Was unwilling to arrange repayment negotiations;

- D. Resented plaintiff $50.00 payment towards the debt;

- E. SRS returned collection file due to FCRA dispute notice.

29.   That federal Title IV HEA regulations did not provide for CCC reporting the $3,621.25 overpayment to Experian as a charge off without Axia first providing repayment opportunity within a two year perimeter and or referring the matter for collection by U.S. government.

30.   That CCC sent Axia student account to State Recovery System [SRS] for collection subsequent to receiving plaintiff payments.

31.   That SRS requested plaintiff pay $3,812.25 allegedly owed Axia in 04/07/2009 letter correspondence.   See, attached Exhibit 4. 04/07/2010 PP. 1. SRS Collection Letter to Plaintiff, in support.

32.   That plaintiff provided SRS a dispute notice requesting disclosure of contractual repayment terms for $3,812.35 allegedly owed Axia.   See, Exhibit 5. PP. 1-3. 04/14/2009 Plaintiff State Recovery Dispute Notice Letter, and Exhibit 6. PP. 1-2. 04/20/2010 Amendment, in support.

33.   That SRS forwarded plaintiff dispute notice supra to CCC for disclosure of contractual repayment terms for alleged $3,812.35 student account debt on or about 04/15/2009.

34.   That Axia university relations specialist Sally Bell did not provide SRS disclosure of contractual repayment terms for alleged $3,812.25 requested by plaintiff but a letter stating the university maintained its position.  See, attached Exhibit 7. 04/28/2010 PP. 1. Bell Response to SRS Repayment Contract Request, in support.

35. That plaintiff communicated to SRS via telephone that the U.S. Education Dept was investigating discrimination complaint involving Axia $3,812.35 student account balance, and that the U.S. Education Dept was investigating complaint alleging the university for misappropriated pell grant funds resulting in collection efforts being suspended and file returned to CCC.

36.   That Axia knew the U.S. Ed. Dept. had not completed its investigation into plaintiff ADA supra discrimination, inter alia, complaints prior to referring the wrongfully alleged $3,812.35 student account debt to CCC for collection.

37.   That Axia wrongfully reported a $3,621.25 federal student financial aid loan as part of a $3,812.25 "unsecured loan" to Experian contrary to lawful provisions set forth under Title IV. HEA and the FCRA.

## C.  *INVALID $823.10 TUITION AND FEES CHARGES*

38.    That Axia wrongfully charged plaintiff $823.10 in tuition, supplies, and early withdrawal fees for approximately three weeks attendance in its 10/19/09 online Criminal Justice Degree Program classes pursuant to 10/03/09 enrollment agreement.

39. That Axia failed to provide 10/19/2009 online education promised in 10/03/2010 enrollment agreement more fully set forth in Count V. Breach of Contracts.   See, Exhibit 2. supra and Exhibit 8. supra., in support.

40.    That Winship recommended plaintiff retake 10/19/2009 classes because:

- A.    Robertson    failed    to    provide    workshop    training assistance preventing ability to properly post assignments and failed to assist towards his obtaining necessary online books;

- B.    Class instructor Denlea was unable to provide first two weeks makeup assignments;   See, attached Exhibit 9. Plaintiff Axia Email Acct. Entries, in support.

- C.    Salazar    intentionally    delayed    processing    ADA accommodation requests. See, Exhibit 10. 11/09/2009 4:28 pm

PP. 1. Plaintiff Email to Winship, and Exhibit 11. 11/10/2009 4:21 pm Winship Reply, in support.

41.   That Winship declined to disclose reasons for recommending plaintiff withdraw from 10/19/2009 classes in email by stating via telephone that "…I will not be responding… because we addressed your concerns in our conversation today… I do not want to recap points of our conversation today".  See, attached Exhibit 2. 11/10/2009 supra Winship Email to Plaintiff, in support.

42.   That Winship recommended plaintiff withdraw from 10/19/2009 online classes and contact Kamhawi for authorized full tuition credit [AWTC] form as remedy for ADA late assignment accommodations grievance.  See, attached Exhibit 12. PP. 1. 11/10/2009 supra at Para. 5., in support.

43.   That plaintiff withdrew from Axia online courses on or about 11/10/2009 supra pursuant to Winship recommendation.

44.   That Winship 11/10/2009 recommendation for plaintiff withdrawal from 10/19/2009 supra classes supra admits Axia breached promise to provide online education pursuant to 10/03/2009 enrollment agreement.

45.    That Axia wrongfully charged plaintiff $823.10 in tuition and fees for 11/30/2009 withdrawal from the university. See, Exhibit 1. 10/4/2010 Winship Letter at PP. 2. Para. 3., in support.

46.    That plaintiff was not obligated to retake 10/19/2009 online classes offered by Winship pursuant to Axia 11/12/2009 authorized withdrawal full tuition credit [AWTC] while executed contrary to university policy and Title IV. HEA financial aid regulations.

47.    That federal HEA regulations prohibits Axia from offering students [AWTC] to retake classes as remedy for denied ADA late assignment disability accommodations, inter alia, contrary to university policy.

48.    That Axia AWTC policy, in relevant part, provides full tuition credit for "students who withdraw from a course due to extenuating circumstances, are in good academic standing, receive a "W" grade and are in compliance with their chosen payment option may request…".

49.    That plaintiff AWTC request listed promise made by Kamhawi regarding 10/12/2009 classes withdrawal option opposed to Winship 11/10/2009 withdrawal recommendation for 10/19/2009 classes See, attached Exhibit 13. 10/15/2009 9:26 am Kamhawi

Email to Plaintiff Regarding Authorized Withdrawal Tuition Credit for 10/12/2009 Classes, in support.

50. That Axia inability to provide 11/12/2009 online classes were the only "extenuating circumstance" listed in plaintiff AWTC endorsed by the university contrary to federal HEA regulations for payment of student aid funds.

51. That U.S. courts cannot enforce Winship 11/10/2009 AWTC agreement with plaintiff to retake 10/19/2009 classes on 12/07/2009 made contrary to federal HEA financial aid regulations.

52. That Axia 10/03/2009 enrollment contract expired 11/10/2009 subsequent to plaintiff withdrawal pursuant to Winship recommendation.

53. That Axia did not secure an enrollment agreement for plaintiff to attend 12/07/2009 online classes as scheduled replacement for 10/19/2009.

54. That Axia AWTC could not extend the 10/19/2009 enrollment agreement terms where obtained contrary to university policy and federal regulations. See, attached Exhibit PP. 1. 11/12/2009 Plaintiff Request for Authorized Withdrawal Tuition Credit, in support.

55.    That plaintiff ultimately cancelled federal student financial aid on through Wachovia bank because Axia required 12/07/2009 class attendance for $2,000.00 financial aid increase requested 08/07/2009.    See, attached Exhibit 14. PP. 1. 11/29/2009 Plaintiff Official Cancellation Form, in support.

56. Plaintiff withdrew from the university on 11/30/2009 being unsatisfied with Winship $2,000.00 denied financial aid grievance responses.    See, attached Exhibit 15.    PP. 1. 11/30/209 Plaintiff University Withdrawal Form, in support.

## V. COUNT II.,
## AXIA TITLE II. ADA, REHABILITATION ACT,
## AND TITLE 42. USCA. SECTS. 2000d VIOLATIONS,

### A. AXIA INTENTIONAL ADA DISABILITY ACCOMMODATION DENIAL

57.    That plaintiff hereby incorporates all averments under Count I. to charge Axia with Count II. supra more fully set forth hereinafter.

58.    That Axia is a private university that provides education to the general public.

59.    That plaintiff is an Afrikan-American male known to Axia and all named staff member defendants through telephone and or email communications at all times relevant to herein complaint.

60.   That plaintiff published past affiliation, association, and membership in the Michigan Melanic Islamic Palace of the Rising Sun Inc [MIPRS] made known to Axia through U.S. Education Dept. Denver OCR complaints at all times relevant to herein complaint.

61.   That plaintiff published involvement in separate civil actions against Minnesota [Community Technical College [MCTC]; city of St. Paul, Minnesota, and Ramsey county municipal government officials and or employees to Axia employee Atkins at all times relevant to herein complaint.

62.   That Axia and all named defendant employees are presumed by plaintiff to have had personal knowledge of his racial, religious, socio-economic, and political activist status' as motive for denying and or intentionally delaying disability accommodations hereinafter alleged.

63.   That plaintiff enrolled at Axia on 08/06/2009 and endorsed a 08/18/09 enrollment agreement for online two years Business Degree Program. See, attached Exhibit 16. PP. 1. University of Phoenix Business Administration Enrollment Agreement, in support.

64.   That plaintiff filed 09/02/2009 complaint with the U.S. Education Dept. Office of Civil Rights [Denver] alleging Axia intentionally delayed professional judgment petition decision to deny admission contrary to the Rehabilitation Acts [504].

65.   That Axia admitted plaintiff to the university on or about 09/15/2009 subsequent to his filing 09/02/2009 OCR complaint.

66.   That Axia denied plaintiff entitlement to receive requested disability advisor counseling and accommodations like all other students similarly situated at Axia pursuant to ADA policy, federal regulatory laws, and U.S. Const. Am. XIV.

67.   That Axia ADA accommodations policy required, in relevant part, that students to make a "self-disclosure", inter alia, requesting disability advisement to receive accommodations.

68.   That plaintiff made "self-disclosure" and request for disability accommodations at least two weeks prior to the start of 10/19/2009 classes.

69.   That Axia assigned Atkins as enrollment advisor subsequent to 08/18/09 enrollment agreement at all times relevant to herein complaint.

17

70.   That plaintiff provided Atkins an email requesting disability advisement referral, inter alia.   See, attached Exhibit 17. PP. 1. Plaintiff 08/17/2009 Letter to Atkins, Sub: "Self Managed Financial Aid/ Counseling Request/ Attendance Adjustment, in support.

71.   That plaintiff noticed Axia online financial aid he suffered mental illness disability through 08/12/2009 email with attached letter from Huntsville, Alabama U.S. Social Security Administration [Self-Disclosure].

72.   That Atkins and Axia supra received plaintiff 08/17/2009 email.

73.   That Atkins and Axia supra disregarded plaintiff 08/17/2009 and 08/18/2009 emails requesting disability counseling and accommodations.

74.   That Atkins deliberately failed to refer plaintiff 08/17/2009 email to Axia disability advisor defendant Salazar.

75.   That Atkins knew that Axia ADA policy required students disability accommodations prior to beginning scheduled classes.

76.   That Axia failure to properly train and or supervise Atkins was the proximate cause of plaintiff denied late

18

assignment disability accommodation for start of 10/19/2009 online classes.

77.   That plaintiff provided defendants Marquez, Robertson, and Salazar independent emails with attached "SSA Disability Verification, Student Self-Disclosure, and Disability Counselor and Accommodations" pdf documents between 09/16/2009 and 09/17/2009. See, attached Exhibit 18. PP. 1-3. 09/16/2009 thru 09/17/2009 Plaintiff Marquez, Robertson, and Salazar Emails, in support.

78.   That Salazar received plaintiff a 09/17/2009 email with attached "SSA Disability Verification and Self-Disclosure Statement", but replied by providing blank copy of the same documents on 09/18/2009. See, attached Exhibit 19. 09/18/2009 Salazar Email to Plaintiff, in support.

79.   That Salazar only required plaintiff to endorse a "Release of Information" form.

80.   That plaintiff again provided Salazar all requested documents 09/20/2009 and 10/15/2009 by both email pdf and fax.

81.   That Salazar received all disability accommodation documents provided by plaintiff via both email and fax between 09/17/2009 and 10/15/2009 but intentionally delayed processing

for malicious racial, political, or anti-religious motives identified in complaint.

82.   That plaintiff filed multiple grievances alleging Axia deliberately denied disability accommodations requested through Salazar.

83.   That Axia became aware of plaintiff third complaint filed with OCR [Denver] alleging denied ADA disability accommodations.

84.   That Salazar acknowledged plaintiff disability documents on or about 10/28/2009 subsequent to Axia knowledge of OCR [Denver] supra complaint.

85.   That Axia removed Salazar as plaintiff disability advisor on or about 11/03/2009.  See, attached Exhibit 20. 11/03/2009 12:49 pm PP. 1. Salazar Email to Plaintiff Introducing Replacement Advisor Jenna Jameson, in support.

86.   That Jameson replaced Salazar as disability accommodation advisor and provided plaintiff late assignment disability accommodations on or about 11/4/2009.  See, attached Exhibit 21. 11/04/2009 PP. 1. 2:47 pm Jameson Email to Plaintiff Providing ADA supra Accommodations, in support.

87.   That plaintiff was already late on several assignments in 10/19/2009 online classes beyond cure of Jameson 11/4/2009 disability accommodations according to instructor Gregory Denlea supra email provided on or about 10/31/2009.   See, attached Exhibit 9. supra.

88. That plaintiff complained against inability to complete assignments to Axia instructors due to:

- A. Robertson failure to notice how to obtain online books;

- B. Denied posting assignment training;

- C. Computer electronic interferences

See, attached Exhibit 9. supra Plaintiff Emails to Denlea and Stricklin, in support.

89.   That Salazar maliciously delayed ADA late assignment disability accommodations, inter alia.

90.   That Axia failure to properly train and or supervise Salazar was the proximate cause of plaintiff delayed ADA late assignment disability accommodations.

## IV. COUNT III.,
### TILA, AND OR CONSUMER PROTECTION VIOLATIONS,

91.   That plaintiff hereby incorporates Count I. supra through Count II supra to charge CCC with Count III supra for violating the federal TILA and or Consumer Protection Act [CPA]

by reporting a $3,812.25 "unsecured loan" charge off debt to Experian more specifically set forth hereinafter.

92. That Axia provided students with the option to self-manage early disbursement of federal Title IV financial aid funds in the regular course of its business at all times relevant to herein complaint. See, attached Exhibit 22. PP. 1. Plaintiff 08/17/2009 Email PDF Letter For Self-Manage supra to Defendant Atkins, in support.

93. That defendant Kammeier denied plaintiff multiple email requests for financial aid counseling prior to Axia $3,621.25 supra electronic disbursement for racial, political, or anti-religious motive between 08/17/09 and 08/18/09. See, attached Exhibit 23. PP. 1-2. 08/18/2009 9:30 am Plaintiff Email Financial Aid Counseling Request to Kammeier, in support.

94. That Axia failure to properly train and or supervise Kammeier was the proximate cause for aforesaid financial aid counseling denial.

95. That Atkins took no action subsequent to receiving plaintiff email correspondence complaining Kammeier denied financial aid counseling. See, attached Exhibit 24. 08/18/2009 Plaintiff Email to Kammeier, in support.

96.    That the federal Statute of Frauds and or TILA required Axia to provide plaintiff a written contractual agreement and or notice regarding terms and or obligations for immediate and full repayment of aforesaid $3,812.25 "unsecured loan" supra.

97.    That Axia violated federal CPA and or TILA regulations where Kammeier denied plaintiff financial aid counseling regarding $3,621.25 disbursed on or about 10/30/09 more specifically because:

- A. Kamhawi and Winship demanded full payment on or about 12/22/09; Plaintiff was forced to make payments beyond financial ability beginning on 04/05/10;

- B. Axia began collections attempts through SRS on 04/06/10;

- C. CCC reported an adverse $3,621.25 charge off to Experian on or about 08/14/10.

98.    That Axia failure to properly train and supervise Kammeier and Kamhawi was the proximate causes of CCC adverse $3,812.25 "unsecured loan" Experian credit report on or about August 14, 2010.

99.   That plaintiff hereby charges Axia with all averment claims under Count II supra independently and jointly wherever found actionable under cited federal statutory authorities.

## VI. COUNT IV.,
## NEGLIGENCE; GROSS NEGLIGENCE;
## WILFUL, WANTON OR RECKLESS DISREGARD,

100.   That plaintiff incorporates all Count I supra averments claims through Count III supra to charge all named defendants with Count IV. Supra wherever applicable more fully set forth hereinafter.

### A. *AXIA DENIED FINANCIAL AID ENTITLEMENT THROUGH NEGLIGENCE SUPRA;*

101.   That Axia failure to properly train and or supervise Kammeier supra was negligent supra for reasons more fully set forth in averments 99 through 105.

102.   That Axia failure to properly train supra was further negligent supra where it caused Atkins to offer plaintiff a $2,000.00 financial aid increase that never materialized for 10/19/2009 pay period against entitlement.

103.   That plaintiff endorsed Axia online financial aid agreement providing that financial aid would be his primary source for tuition payment on 08/06/2009. See, Exhibit PP. University Phoenix Financial Aid Agreement, and Exhibit 25. PP.

1. August 7, 2009 University of Phoenix Authorization to Apply, in support.

104. That plaintiff was entitled to apply for any available financial aid to pay for tuition through federal sources subsequent to endorsing Axia 08/06/2009 agreement.

105. That Atkins assumed the role of plaintiff financial aid advisor where she provided information and documentation providing for a $2,000.00 increase in financial aid.   See, attached Exhibit 26. PP. 1-2. 08/7/2009 Atkins Email to Plaintiff w/attached FACF, in support.

106. That Atkins was not employed as a financial aid advisor for Axia at any time relevant to herein complaint.

107. That plaintiff relied on Atkins representation that the FACF $2,000.00 increase form would be processed for anticipated $4,621.25 deposit in Redstone checking account on or about 10/30/09 to his financial detriment and hardship.

108. That plaintiff executed a loan agreement on or about 09/01/2009 based on Atkins 08/7/2009 representations supra and needed the entitled $4,621.25 supra providing the additional $1,000.00 supra for repayment.

109.   That neither Atkins, Kammeier, or Axia financially advised plaintiff that his 08/07/09 FACF would not be honored for processing by the university to his financial detriment.

110.   That plaintiff could not have realized his 08/7/2009 FACF would not be processed by Axia financial aid without counseling.

111.   That Atkins deliberately disregarded plaintiff 08/07/09 FACF subsequent to receiving Axia notice she had been replaced by Marquez as enrollment counselor on or about 08/18/2009.

112.   That Kamhawi declined plaintiff email request for financial status on Wednesday, 08/26/09.  See, attached Exhibit 27. PP. 1. August 26, 2009 Plaintiff Email to Kamhawi, Sub: Class Beginning Information Request, Para. 3. Provide Financial Aid Status, in support.

113.   That Kamhawi financial aid supervisor Hillary O'Donnell promised plaintiff the additional $2,000.00 award subsequent to processing on 11/02/09.  See, attached Exhibit 28. PP. 1. 11/2/2009 5:09 pm O'Donnell Email to Plaintiff, in support.

114.   That O'Donnell later contacted plaintiff requesting he change the original 08/07/09 date on the FACF to 11/04/09. See, Exhibit 29. PP. 1. 11/4/2009 O'Donnell Email to Plaintiff, in support.

115.   That O'Donnell promised the additional $2,000.00 financial aid award request would be certified within 11 business days later occurring on 11/11/09.   See, attached Exhibit 30. PP. 11/05/2009 O'Donnell Email to Plaintiff, and Exhibit 31. PP. 1-5. 11/11/2009 University of Phoenix Financial Aid Award Letter, in support.

116.   That Kamhawi, O'Donnell, and Winship represented to plaintiff that he would receive entitlement to a $2,000.00 financial aid increase when he posts attendance in scheduled 12/07/09 online classes.

117.   That Kamhawi, O'Donnell, and Winship denied plaintiff entitlement to the $2,000.00 financial aid increase as tactic to insure university compensation for known unlawful 11/03/09 early $3,621.25 financial aid disbursement.

118.   That Axia denied plaintiff entitlement to aforesaid $2,000.000 financial aid increase requested 08/07/2009 thorough negligence supra by failure to properly train and or supervise

Atkins, Kammeier, and Kamhawi for reasons more fully expressed in foregoing averments 110. Thru 119.

119.   That Axia failure to process the 08/07/2009 FACF denied plaintiff entitlement to $4,621.00 deposit into Redstone checking account to injury related in Averments 103. thru 119.

**B. AXIA DENIED ADA DISABILITY ACCOMMODATIONS THROUGH NEGLIGENCE SUPRA;**

120.   That plaintiff charges Axia with negligence supra regarding ADA disability accommodation denial more fully set forth in foregoing Count II supra Averments 57. thru 90.

**C. AXIA APPLIED PLAINTIFF $582.00 PELL GRANT THROUGH NEGLIGENCE SUPRA;**

121.   That Axia applied plaintiff $582.00 federal pell grant to $4,444.35 tuition and educational related costs for 10/19/2009 classes through negligence supra more fully set forth in Count VI. Unjust Enrichment.

## VII. COUNT V.,
## BREACH OF CONTRACTS,

122.   That plaintiff hereby incorporates foregoing Count I claims supra against all named defendants to charge Axia with Count V. Breach of Contracts more fully set forth hereinafter.

123.   That Axia knowingly breached 08/06/09 financial aid and 08/07/09 authorization to apply agreements through negligence set forth in Count IV. B. supra Averments 103. through 119. supra.

124.  That Axia breached 10/03/2009 enrollment agreement by Robertson supra failure to provide workshop training and supplies, and Salazar timely disability accommodations denials resulting in Winship 11/10/2009 withdrawal recommendations more fully set forth in Count II. supra A. supra Averments 57. through 90.

## VIII. COUNT VI.,
## UNJUST ENRICHMENT,

125.   That plaintiff incorporates foregoing Count I. supra through Count V. supra claims to charge Axia with Count VI. Unjust Enrichment and more specifically that it wrongfully applied $582.00 in federal pell grant funds to its aforesaid $4,444.35 tuition costs for 10/19/09 classes contrary to Title IV. Return and late disbursement regulations.

126.   That Axia $582.00 aforesaid unjust enrichment caused plaintiff immense financial hardship being dependent on fixed social security income and otherwise entitled to the federal financial student aid funding towards replacement educational opportunities.

29

## IX. COUNT VII.,
## MISREPRESENTATION/ FRAUD,

127.    That plaintiff hereby incorporates Count I. supra through Count VI. Supra claims to charge Axia with Count VII. Misrepresentation and or Fraud more specifically set forth hereinafter.

### A. *KAMHAWI FINANCIAL AID DISBURSEMENT MISREPRESENTATION;*

128. That Kamhawi maliciously misrepresented to plaintiff that Axia would disburse $3621.25 in federal financial aid to him without attending 10/12/09 online classes based on his past experiences as financial advisor with the university contrary Title IV. regulatory provisions. See, attached Exhibit 32. 10/15/2009 9:26 am Kamhawi Email to Plaintiff, in support.

129. That Kamhawi knew Axia would not disburse plaintiff financial aid without attending 10/12/2009 scheduled class.

### B. *WINSHIP AUTHORIZED WITHDRAWAL CREDIT MISREPRESENTATION;*

130. That Winship misrepresented that Axia was able to provide plaintiff 11/12/2009 AWTC to retake 10/19/09 classes contrary to university published policy and identified federal student financial aid regulations more fully set forth in Count I. Averments 38-56, Exhibit 2., in support.

**C. KAMHAWI, O'DONNELL, AND AXIA AUTHORIZED WITHDRAWAL CREDIT MISREPRESENTATIONS;**

131.   That Kamhawi, O'Donnell, and Axia misrepresented that plaintiff was obligated to attend 12/07/09 classes based on 11/12/2009 AWTC more fully set forth in Count IV. supra Averments 113-119., in support.

132.   That plaintiff was not obligated to attend aforesaid 12/07/09 classes without new enrollment agreement endorsement known to defendants named in herein count.

133.   That plaintiff is entitled to whatever punitive and or multiplied damages under federal and or Arizona law as remedy for all claims charged against defendants.

## X. COUNT VIII.,
## LIBEL AND SLANDER,

134.   That plaintiff hereby incorporates foregoing Count I through Count VII claims and supporting exhibits to charge both Axia and CCC with Count VIII. Libel & Slander and more specifically as follows.

135.   That Axia communicated to State Recovery System [SRS] both verbally and in writing on or about 04/06/2010 that plaintiff owed $3,812.25 for unpaid tuition, fees, and other

education related costs later communicated to Experian by CCC on or about 08/14/2010 in same manner herein described.

136.   That both Axia and CCC knew that the $3,862.00 supra debt communicated to SRS was materially false, invalid, and inaccurate based on facts now revealed in FCRA, TILA, ADA, Rehabilitation Act 504, and 42 USC Sects. 2000d counts cited in complaint.

137.   That Axia and CCC aforesaid communications made to said third parties caused negative alert damage to plaintiff credit worthiness reducing score against future candidacy for educational financing by private sources and or any personal loan, housing and or employment considerations for seven years duration.

138.   That Axia maliciously and vindictively caused CCC to report aforesaid $3,812.25 supra against plaintiff credit standings specifically to prevent eligibility, consideration, and or approval for foreseeable private financial institution loan applications.

139. That plaintiff credit score decreased from 656 to 574 between 07/2010 and 09/2010 subsequent to CCC supra $3,812.25 "unsecured loan" Experian credit report on or about 08/14/2010.

140.   That Sallie Mae denied plaintiff private loan application for $1,000.00 immediately subsequent to Axia supra aforesaid adverse Experian $3,812.25 "unsecured loan" charge off report.

141.   That CCC supra maliciously denied plaintiff notice it filed aforesaid adverse Experian supra credit report within time requirements subsequent to 08/14/2010 contrary to lawful FCRA provisions.

142.   That Axia and named defendants caused plaintiff precious time and money, including mental anguish and emotional distress sufferings, attempting to resolve denied postsecondary education opportunity herein related to his academic, financial, and social injuries suffered between 08/06/2009 and 08/14/2010 involving over one whole year grieving institutionally and administratively resulting in herein complaint.

143.   That plaintiff complains against all defendants first as individuals then, secondly, jointly and severally, including in corporate capacities, for all claims within foregoing counts made against them for both injunctive and monetary relief hereinafter sought.

## XI. RELIEF SOUGHT,

**WHEREFORE,** plaintiff seeks an order of relief against all defendants supra for each individual foregoing claim beginning with CCC as follows:

### A. *INJUNCTIVE RELIEF;*

An order directing CCC to immediately remove Experian credit report wrongfully alleging Axia $3,812.25 "unsecured loan" charge off submitted in violation of FCRA "Inaccurate Data" prohibition.

### B. *PUNITIVE DAMAGES;*

That all defendants supra be ordered to pay plaintiff $25,000.00 or the a maximum punitive damage award provided for under Arizona and or federal statutes for each individual and respective claim applicable set forth against them under each respective Counts to herein complaint.

### C. *MONETARY DAMAGES;*

That all defendants supra be ordered to pay plaintiff $100.000.00 One Hundred Thousand Dollars award for each individual and respective claim set forth against them under each respective Counts to herein complaint together with court costs and attorney fees where applicable.

That plaintiff respectfully requests any other relief deemed
necessary by this honorable court under herein related Count I
FCRA, inter alia, circumstances.


**RESPECTFULLY SUBMITTED,**

BY:

**WENDELL DWAYNE O'NEAL,
PLAINTIFF, IN PRPRA. PRSNA.,
THIRTEENTH DIMENSION LLC,
A CRISIS MGMT. ENTERPRISE,
P.O. BOX 2229,
HUNTSVILLE, ALABAMA 35804,
(256)-457-3596.,
spirit.999@live.com.**


**OCTOBER 27, 2010 ABA.**

OFFICIAL Business

PLEASE PRESS FIRMLY

Clerk Of
United States
District Court
401 West Washington
Phoenix 85003

**EXPRESS MAIL**

Flat Rate Mailing Envelope

UNITED STATES POSTAL SERVICE

**RECEIVED**

Addressee Copy
Label 11-B, March 2004

MICHAEL K. JEANNAH, CLERK
UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

Post Office Copy

HUNTSVILLE AL
OCT 28 10
AMOUNT
$19.05
00031681-14

1007

PLEASE PRESS FIRMLY

TO: (PLEASE PRINT)
Clerk of Court
United States District Court
401 West Washington Street
Phoenix, Arizona 85003

FROM: (PLEASE PRINT)
Jordan O. Friend
174 Aunt Creek Crossing
Madison Alabama 35758

Mailing Label Here:

EG 652 556 288 US

PRESS HARD. YOU ARE MAKING 3 COPIES.

FOR PICKUP OR TRACKING
Visit **WWW.USPS.COM**
Call 1-800-222-1811

Please recycle.

082708_EM_EP13F  OCT 2008